IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY WAYNE ELROD,

       Plaintiff,

vs.                       Case No. 06-3115-SAC

(FNU) WALKER, et al.,

       Defendants.


MEMORANDUM AND ORDER

This case comes before the Court on Defendants' motion to dismiss or in the alternative for summary judgment. Plaintiff, a *pro se* litigant, complains that his constitutional rights were violated when he was assaulted by correctional officers at United States Penitentiary Leavenworth on April 14th, 2005. In a prior order, the Court dismissed all *Bivens* claims against the United States, the Bureau of Prisons, and any individual defendant in his official capacity as barred by sovereign immunity. Doc. 12 p.3. The Court also found that the United States is the only proper defendant for Plaintiff's FTCA claim. *Id.* Thus Plaintiff's remaining claims, all arising from the April 14th incident, are: 1) Defendants Walker, Lacy, Gum, and Gray violated his Eighth Amendment rights by using excessive force; 2) Defendant Gray assaulted him in retaliation for Plaintiff's protected conduct of filing two civil lawsuits the previous month or filing administrative grievances; and, 3) the USA violated the Federal Tort Claims Act by assaulting and battering him and stealing his personal property.

## I. Summary Judgment Standard

The parties have submitted numerous documents outside the pleadings, so the Court determines whether summary judgment is appropriate. A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v.. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will … preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp .,* 475 U.S. 574, 587 (1986).

To counter a "properly made" motion, the non-movant must "set out specific facts showing a genuine issue for trial" by way of admissible evidence in compliance with Rule 56(e)(1). A party faced with a summary judgment motion may not simply rest on allegations contained in the pleadings, but must come forward with admissible evidence establishing each fact he relies upon. *BancOklahoma Mort. Corp. v. Capital Title Co.,* 194

F.3d 1089, 1097 (10th Cir. 1999). Our local rule requires those facts to be "presented by affidavit, declaration under penalty of perjury," or other stated discovery. D.Kan. 56.1(d). Affidavits and declarations must be made on personal knowledge and shall set forth such facts as would be admissible in evidence. *Id; See* Fed.R.Civ.P. 56(c)(4).

## II. Facts

Plaintiff has not complied with the Court's rules governing summary judgment motions, despite the fact that the relevant rules were sent directly to him. *See* Doc. 26, Exh. L. Plaintiff's response fails to set forth his facts, or counter Defendants' facts, with the required specificity. Plaintiff's response evidences no effort whatsoever to comply with those rules, which are not mere technicalities but are designed to promote fairness and reliability in the process. As a result, all material facts set forth in Defendants' statements of fact are deemed admitted. *See* D. Kan. Rule 56.1.

Plaintiff was incarcerated at USP Leavenworth from February 7, 2002, through November 12, 2003, and from March 11, 2004 through August 4, 2005. Defendant Walker received information from Defendant Gum that Plaintiff had stolen an item, so instructed Plaintiff to follow him to the strip search area. While walking next to Plaintiff, Defendant Walker saw Plaintiff reach into the top of his pants and remove an unknown item, which Plaintiff attempted to conceal from him. Defendant Walker instructed Plaintiff to show him what he had in his hands, but Plaintiff refused and brought his

hand with the item up to his mouth. Defendant Walker tried to grab Plaintiff's hand which had held the unknown object, then grabbed Plaintiff, who became combative, and resisted. Defendant Walker believed Plaintiff's act of ingesting some unknown item could harm Plaintiff, and that Plaintiff's actions could create a significant disruption within the correctional institution setting, as Plaintiff was defying direct orders by staff, trying to conceal an item, and being physically combative with staff.

Defendant Walker then took Plaintiff to the ground, yelled for assistance, and used the force he determined was necessary to control the Plaintiff. Several staff members responded to his call. While Plaintiff was on the ground, he continued to be combative with staff and resisted their efforts to regain control over him. Plaintiff did not obey Defendant Walker's instruction that he provide his left hand to be restrained. Eventually, Defendant Walker brought Plaintiff's left hand towards Plaintiff's back and secured the restraint on both of Plaintiff's hands, and assisted Plaintiff to his feet. Plaintiff was then escorted to the Lieutenant's office. Plaintiff sustained physical injuries as a result of the incident, requiring medical care.

The tape of the incident shows that Defendant Walker grabbed the Plaintiff, that Plaintiff turned away from Defendant Walker, and that Defendant Walker then took Plaintiff to the floor. At least seven other officers responded and got on the floor to assist in subduing the Plaintiff. The entire incident, from Defendant Walker's first touching of Plaintiff until

Plaintiff was assisted to his feet, lasted approximately one-and-one-half minutes. The tape shows Defendant Lacy observing the incident, but does not show Defendants Gray or Gum at all.

Defendant Gum received a telephone call from the Health Services Department at approximately 3:30 p.m. on April 14th to strip search the Plaintiff because he was believed to have stolen some hand sanitizer from the department. Defendant Gum relayed that information to Defendant Walker, who was working in the Center Hall area, pat searching inmates. Defendant Gum saw Defendant Walker walking with Plaintiff toward the strip search room, heard Defendant Walker yell, then saw Plaintiff fall to the floor. Defendant Gum then activated emergency notification to summon staff assistance, but did not approach the Plaintiff, and remained in his area near Center Hall.

Defendant Lacy, who was the Discipline Hearing Officer during April, 2005, was in the Center Hall area on April 14, 2005. He did not see the initial use of force by Defendant Walker, but saw the Plaintiff on the ground, refusing to submit to restraints. Defendant Lacy instructed Plaintiff to submit to restraints, but was not involved in the use of force or any application of restraints, and did not touch Plaintiff during the incident. He observed staff acting appropriately and within BOP's Use of Force policy in attempting to regain control of Plaintiff, whom Defendant Lacy characterized as belligerent

and uncooperative. Defendant Lacy did not observe any excessive force used against Plaintiff.

Defendant Gray was not involved in any use of force against Plaintiff on April 14, 2005. On that date, he was not in the area of Center Hall, did not respond to any call for assistance, and did not touch the Plaintiff. Defendant Gray was Plaintiff's Case Manager in late January through mid-February 2005. Liberally construed, Plaintiff's "affidavit" attached to his Amended Complaint alleges three statements made by Defendant Gray: 1) on February 1, 2005, Defendant Gray threatened to make sure Plaintiff got indicted for something if Plaintiff continued to file administrative remedies; 2) on February 1, 2005, Defendant Gray said that if Plaintiff wished to go home in 71/2 years then he had better stop filing administrative remedies and lay low or Defendant Gray would do whatever it took to get Plaintiff indicted for something and more time in prison; and 3) on July 13, 2005, Defendant Gray came to Plaintiff's SHU cell door and told Plaintiff that he had Defendant Walker jump on Plaintiff on April 14th and that he would have it done again if Plaintiff did not drop his lawsuits and keep his mouth closed.

Defendant Gray denies making any threats of retaliation in any manner against Plaintiff for filing administrative remedies or civil lawsuits, and avers that he was not aware of any pending litigation by Plaintiff until June of 2005. If Plaintiff had spoken to Gray in July of 2005, or at any time

when Gray was no longer Plaintiff's case manager, he would have directed Plaintiff to his appropriate unit team members.

Other staff members who were involved in restraining the Plaintiff opine that no excessive force was used and that the immediate use of force complied with BOP policy. The BOP authorizes staff to use force on a particular inmate to gain control of the inmate, protect and ensure the safety of inmates, staff and others; to prevent serious property damage; and to ensure institution security and good order. *See* BOP Regulations and Program Statement 5566.06, *Use of Force and Application of Restraints* ("P.S. 5566.06"). Staff are authorized to apply physical restraints necessary to gain control of an inmate who appears to be dangerous because the inmate: a. Assaults another individual; b. Destroys government property; c. Attempts suicide; d. Inflicts injury upon self; or e. Becomes violent or displays signs of imminent violence. Staff are to exercise sound correctional judgment in making determinations as to when force is necessary to be used and the level of force necessary to contain the situation.

BOP policy also recognizes the need for immediate use of force, in providing:

> Since inmates occasionally become violent or display signs of imminent violence, it is sometimes necessary for staff to use force and restraints to prevent them from hurting themselves, staff, or others, and/or from destroying property. . . .Staff may immediately use force and/or apply restraints when the behavior . . . constitutes an immediate, serious threat to the inmate, staff, others, property, or to institution security and good order.

*See* BOP Regulations and Program Statement 5566.06.

BOP officials conducted various administrative reviews of the Immediate Use of Force utilized on April 14, 2005, and consistently found the use of force to be appropriate, within policy guidelines, and reasonable under the circumstances.

## III. Analysis

### A. Failure to Exhaust Administrative Remedies - *Bivens* claims

#### 1. General exhaustion requirement

Defendants move the Court to dismiss Plaintiff's *Bivens* claims and Plaintiff's FTCA claim for property loss because Plaintiff has failed to exhaust his administrative remedies as to those claims. Where an inmate has failed to exhaust his administrative remedies on certain claims, dismissal of those claims is appropriate. *See Jones v. Bock*, 549 U.S. 199 (2007). The Prison Litigation Reform Act (PLRA) requires all complaints involving prison conditions to be exhausted through the filing of administrative remedies before the complaint may be filed in federal court. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). See 42 U.S.C. § 1997e(a) ("No action shall be brought … until such administrative remedies as are available are exhausted.")

The exhaustion requirement applies to *Bivens* suits, such as Plaintiff brings here. The record reflects that Plaintiff has filed 387 administrative remedies during his incarceration, many of which were during his incarceration at Leavenworth, reflecting Plaintiff's knowledge of the proper

grievance procedure. Plaintiff's administrative filings related to plaintiff's use of force and retaliation claims arising from the April 14th incident were rejected by the agency for technical compliance errors and have not been addressed on the merits. *See* Doc. 26, Exh. B: Sheldrake Declaration, Attachment 4, pp. 18-20, #387082-84. *See also Elrod v. Swanson*, 478 F.Supp.2d 1252 (D.Kan. 2007) (dismissing Plaintiff's retaliation claims based on Defendant Gray's February 1st statements for Plaintiff's failure to exhaust administrative remedies). An inmate's administrative claim that is rejected for procedural reasons and is not considered on the merits is considered unexhausted. *See generally Patel v. Flemming*, 415 F.3d 1105 (10th Cir. 2005); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

### 2. Unavailability exception

Plaintiff does not dispute that he failed to exhaust his claims related to this case, but contends that exhaustion was unavailable because BOP employees repeatedly refused to give him the proper forms. If an administrative remedy is not available, then an inmate cannot be required to exhaust it. *Tuckel v. Grover*, 660 F.3d 1249, 1250 (10th Cir. 2011).

The Tenth Circuit has recently clarified that a Plaintiff who claims the unavailability of administrative remedies bears the burden to prove it, stating:

> Failure to exhaust under the PLRA is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 212, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Defendants thus bear the burden of asserting and proving that the plaintiff did not utilize administrative remedies. *Id.* Once a defendant

proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials.

Tuckel, 660 F.3d at 1254.

The Court applies this standard to Plaintiff's claims that administrative remedies were unavailable because prison officials refused to give him the forms he needed and requested. An administrative remedy is not "available" under the PLRA if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy." *Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir. 2010). *See Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002). The Tenth Circuit has recognized in unpublished cases that administrative remedies are not "available" when prison officials refuse to provide prisoners with grievance forms. *See Baldauf v. Garoutte,*137 Fed.Appx. 137, 141 (10th Cir. 2005). *cert. denied,* 546 U.S. 1183 (2006); *Hoover v. West,* 93 Fed. App'x 177, 181 (10th Cir. Feb.19, 2004).

In support of his claim that Defendants thwarted his exhaustion efforts, Plaintiff cites various paragraphs in his complaint or amended complaint. *See* Doc. 59, p. 3, citing paragraphs 33, 35, 36, 43, 44, & 45 of his complaint, "his affidavit (attached to his complaint as Exhibit 3); and Dk. 11-1, p. 1-41." But the cited paragraphs of Plaintiff's complaint are either irrelevant to this issue (33-36) or do not exist (43-45) either in his complaint or amended complaint. The other record cited by Plaintiff (Dk. 11-1, pp. 1-

41) consists of numerous other attachments to Plaintiff's amended complaint. Some of these exhibits contain only conclusory claims that Plaintiff was denied "all access to the administrative remedy process" at USP Leavenworth," or "all access to the administrative remedy forms." *See e.g.*, Doc. 11, Exh. 1, p. 22; p. 27. Such claims lack specificity and do not state a claim for denial of access to the grievance system. *See Baldauf v. Garoutte*, 2007 WL 2697445, *8 (D.Colo. 2007), *affirmed,* 295 Fed.Appx. 294 (10th Cir. 2008). Further, conclusory allegations, standing alone, do not create a genuine issue of material fact. *See Thomas v. U.S. Bureau of Prisons,* 282 Fed. Appx. 701, 2008 WL 2498049, at *3 (10th Cir. June 24, 2008) (unpublished); *White v. Tharp,* 2008 WL 596156, at *10 (D.Colo. Feb.29, 2008) (unpublished).

Other attachments are more specific, *see e.g.*, Doc. 11, p. 64-67, and include Plaintiff's claim dated April 20, 2005 that he asked for a "sensitive" form "to send directly to the regional office about the assault/beating on Thursday." *Id.*, p. 64. But these and most of the other cited documents which contain some detail bear no indicia that they were actually created at the time they are dated, and do not reflect that they were ever submitted to the BOP, as they and reflect no disposition by any level (institution, regional, national, etc.). The one exception is Exhibit 3 to Plaintiff's amended complaint -- an inmate request to staff dated May 1, 2005, alleging in part:

> My unit team (Mr. Sediool & Mr. Stratton) are subverting my attempts
> to file administrative remedies by denying me the necessary and

required forms. When I am able to obtain said forms from other unit teams the (sic) refuse to turn my completed forms in to the administrative remedy coordinator. Therefore I am being denied access to the administrative remedy process.

Dk. 11, Exh. 3. The second page of the form states that Plaintiff was assaulted by BOP staff on April 14, 2005, linking the administrative remedy to the underlying issues in this case.

As noted above, this Court can consider only admissible evidence in deciding a summary judgment motion. *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209 (10th Cir. 2010) (finding "any hearsay contained in a summary judgment affidavit remains hearsay, beyond the bounds of the court's consideration."). But none of Plaintiff's allegations of being denied grievance forms are supported by sworn pleadings, affidavits, or other evidentiary material. *Phillips v. Calhoun,* 956 F.2d 949, 951 n. 3 (10th Cir. 1992) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings."). Plaintiff repeatedly refers to his "affidavit" (Doc. 11, Exh. 10), but that undated, unnotarized "affidavit" is neither an admissible affidavit nor a proper declaration under penalty of perjury.[1] Thus

---

[1] Plaintiff has filed multiple surreplies (Doc. 61, 65, 66), but the Court disregards them, as surreplies are not permitted absent leave of court, and no leave has been given. Doc. 66, however, is a proper declaration under penalty of perjury, demonstrating Plaintiff's awareness of and ability to file admissible evidence. Doc. 66 unsuccessfully attempts to retroactively cure his previous undated "affidavit" (Doc. 11, Exh. 10).

Plaintiff has failed to demonstrate with any admissible evidence that prison officials thwarted his attempts to exhaust the claims he makes in this case.[2]

Defendants also contend that if BOP staff at Leavenworth denied Plaintiff the forms he needed, Plaintiff could have pursued alternative avenues to exhaust his administrative remedies. *See Baldauf,* 137 Fed.Appx. at 141 (citing *Jones v. Smith,* 266 F.3d 399 (6th Cir. 2001) (affirming dismissal for failure to exhaust because plaintiff failed to allege that the prison official who refused to provide a grievance form was the only source of those forms or that plaintiff made other attempts to obtain a form or file a grievance without a form); 28 C.F.R. § 542.13 (providing that informal resolution attempts may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when an inmate demonstrates an acceptable reason for by-passing the informal resolution process); 28 C.F.R. § 542.14(d) (permitting inmates to by-pass the institution as a whole and file an administrative remedy submission directly with the Regional Office where the claims are sensitive); *Id.* (permitting inmates to present evidence to the agency that staff were denying him forms which might have justified his reason for delay in filing any of his belated administrative remedies.)

The Court finds that Plaintiff has failed in his burden to show admissible evidence that administrative remedies were unavailable to him as

---

[2] The same evidentiary failures doom Plaintiff's substantive claims of excessive force, retaliation, and assault and battery.

a result of actions or inactions of prison officials.[3] Because Defendants have

shown that Plaintiff failed to exhaust his administrative remedies, the Court

lacks subject matter jurisdiction over Plaintiff's claims of excessive force and

retaliation.

### B. Failure to exhaust FTCA property claim

Defendants also assert that Plaintiff's FTCA claim based on property

loss should be dismissed for lack of subject matter jurisdiction because it has

not been exhausted. A federal statute, 28 U.S.C. § 2675(a), bars claimants

from bringing suit in federal court until they have exhausted their

administrative remedies under the FTCA. *See McNeil v. United States*, 508

U.S. 106, 113 (1993). Plaintiff's administrative tort claim, dated Sept. 2,

2005, attached to his Amended Complaint contends in relevant part:

> On April 14, 2005, at USP Leavenworth a gang of prison guards
> trespassed against me and negligently broke my left arm in four
> places, damaged both shoulders, damaged my right knee, damaged
> my left wrist, damage (sic) to both of my kidneys and mental anguish.

Doc. 11, Exh. 14, p. 63. Plaintiff filed this claim in September of 2005, and it

was subsequently denied. This claim makes no assertion of property loss.

Plaintiff has filed other FTCA administrative claims, but Plaintiff fails to

show that any of them allege property loss or theft related to the April 14th

---

[3] Although the Court affords some leeway to pro se parties, it cannot merely
overlook Plaintiff's failure to state and oppose material facts in compliance
with the local rules, and Plaintiff's failure to submit admissible evidence, and
Plaintiff's submission of multiple documents not contemplated by the rules.

incident at USP Leavenworth. Accordingly, Plaintiff's FTCA claim for stolen personal property is dismissed without prejudice for lack of exhaustion.

But even if Plaintiff had exhausted this tort claim, his FTCA claim for alleged mishandling of property would be barred by sovereign immunity. *See* 28 U.S.C. § 2680(c) (retaining sovereign immunity as to claims arising from the detention of any goods, merchandise, or other property by any law enforcement officer); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008). Even when property is intentionally damaged, the statute does not waive sovereign immunity. *See* 28 U.S.C. § 2680(h); *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in the statutory text, and will not be implied." (citations omitted)). Accordingly, Plaintiff's FTCA claim for stolen personal property is dismissed with prejudice for lack of subject matter jurisdiction.

### C. Federal Tort Claims Act jurisdiction- assault and battery

The sole claim properly exhausted by Plaintiff is his FTCA claim based on the BOP officers' use of force. Defendants assert that this Court lacks subject matter jurisdiction as to this claim.

### 1. FTCA Waiver of sovereign immunity for negligence

Through the Federal Tort Claims Act (FTCA), the United States has generally waived its sovereign immunity, permitting civil suits for actions arising out of negligent acts of agents of the United States. Nonetheless,

Defendants contend that Plaintiff's FTCA claim for assault is barred by the United States' sovereign immunity because the United States has not waived sovereign immunity with respect to intentional tort claims against the United States. *See FDIC v. Myers*, 510 U.S. 471, 477-78 (1994); *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998). Applicability of the intentional tort exception is a question of subject matter jurisdiction. Dry v. U.S., 235 F.3d 1249 (10th Cir. 2000).

Plaintiff apparently hopes to avoid the bar of intentional tort actions by styling his FTCA claim solely as a negligence claim. *See* Doc. 11, Exh. 14, p. 63 (Plaintiff's FTCA claim alleged that on April 14, 2005, at USP Leavenworth, "a gang of prison guards trespassed against me and negligently broke my left arm ...") But Plaintiff's stylistic attempt to bring himself within the waiver of sovereign immunity is unsuccessful. *See U.S. v. Shearer*, 473 U.S. 52, 55 (1985) ("No semantical recasting of events can alter the fact that the battery was the immediate cause of [Plaintiff's injury] and, consequently, the basis of respondent's [FTCA] claim.") The nature of Plaintiff's claim is not determined by focusing on the label Plaintiff uses, but on the conduct which gave rise to his claim. *Benavidez v. U.S.*, 177 F.3d 927, 931 (10th Cir. 1999). The statute retains sovereign immunity for any "claim arising out of assault [or] battery." 28 U.S.C. §2608(h). Plaintiff's claims of personal injury, whether inflicted negligently or not, "arise out of" the April 14th alleged assault. *See Georgacarakos v. U.S.*, 420 F.3d 1185 (10th Cir.

2005) (broadly defining "arising out of" under FTCA). Such claims are generally not actionable under the FTCA.

### 2. FTCA law enforcement proviso for certain intentional torts

One exception, however, may permit Plaintiff to bring this claim under the FTCA. It allows claims against the United States for certain intentional torts committed by law enforcement officials with the authority to conduct arrests, searches and seizure of evidence. 28 U.S.C. § 2680(h). Specifically, the statute provides that suits may be brought

> ... with regard to acts or omissions of investigative or law enforcement officers of the United States Government ... [for] any claim arising ... out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

*Id*. The statute defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id*.

Defendants concede that the BOP officers named as individual defendants in this action qualify as "law enforcement officers" within the meaning of this subsection. Doc. 26, p. 30, citing 18 USC § 3050. But Defendants contend that jurisdiction exists under this exception only if the individual defendants committed the April 14th assault while executing a search, seizing evidence, or making an arrest, or while otherwise acting in their capacities as law enforcement officers, instead of in their capacities as correctional officers in the interest of penal security.

The Tenth Circuit has not addressed whether FTCA jurisdiction under this subsection depends on whether a law enforcement officer is acting in a law enforcement capacity at the time of the altercation giving rise to the claim. Other Circuits reflect various approaches. *Compare e.g.*, *Pooler v. United States,* 787 F.2d 868, 872 (3d Cir. 1986) (holding that the law enforcement proviso of § 2860(h) provides jurisdiction over the listed intentional torts only when committed "while executing a search, seizing evidence, or making an arrest"), with *Cross v. United States*, 159 Fed. App'x 572, 576 (5th Cir. 2005), and *Orsay v. U.S. Dept. of Justice,* 289 F.3d 1125, 1133 (9th Cir. 2002) (both finding Congress "intended to allow federal government liability only when the investigative or law enforcement officers were acting as such by engaging in investigative or law enforcement activities).

This Court, however, under facts very similar to those in this case, recently declined to apply the approach urged by Defendants. In *Flores-Romero v. U.S.*, 2011 WL 4526771 (D.Kan. 2011), an inmate claimed he was assaulted and injured by a BOP officer who was responding to a fight at the facility. This Court found that the BOP officer's actions in responding to a disturbance and helping to restore security were not distinctively different from his "law enforcement or investigative" activities, stating:

> In the context of an inmate disturbance, Lt. Starr was of course attempting to restore order and secure the safety of inmates and staff, but such action appears on its face to be both within the scope of what is expected during the course of his employment and within his law

enforcement authority. *See e.g.* 18 U.S.C. § 3050(3) (authorizing a BOP officer to arrest without a warrant for criminal offenses "if necessary to safeguard security, good order, or government property").

*Flores-Romero*, 2011 WL 4526771 at *5. *See generally Dry*, 235 F.3d at 1257 (finding the FTCA's general waiver of sovereign immunity extends to suits for intentional torts enumerated in the proviso "if the conduct of investigative or law enforcement officers of the United States Government is involved.").

Here, as in *Flores-Romero*, the claim alleges abuse and tortious conduct by government officials authorized to use necessary and reasonable force in carrying out their law enforcement duties. In both cases, BOP officers responded to a disturbance to help restore security in the prison by subduing a prisoner. Defendant has failed to show that the BOP officers' acts in this case were outside the scope of their law enforcement authority, or to show that their acts were not done in their capacities as law enforcement officers.[4] Accordingly, Plaintiff's FTCA claim for the alleged assault and battery falls within the proviso, making subject matter jurisdiction proper.

### D. FTCA - Assault and battery

Defendants seek summary judgment on Plaintiff's assault and battery claim because the use of force directed at the Plaintiff was reasonable and appropriate under the circumstances, complied with BOP policy related to

---

[4]Defendants do not invoke the discretionary function exception of 28 U.S.C.A. § 2680(a).

use of force, and thus did not constitute an assault or battery under Kansas law.

The FTCA incorporates state law, including each state's elements of battery and assault. *See* 28 U.S.C. § 2680(h); 28 U.S.C. § 1346(b)(1). The FTCA creates liability for the United States only if the act at issue is a tort in the state in which the conduct occurred. Under Kansas law in April of 2005, the tort of assault was defined as "an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm." *Taiwo v. Vu*, 249 Kan. 585, 596 (1991), *quoting* PIK Civ.2d 14.01. The tort of battery was defined as "[i]ntentional and wrongful physical contact with a person without his or her consent that entails some injury or offensive touching." *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 703 (1998). "The gravamen of a civil assault and battery is grounded upon the actor's intention to inflict injury." *Stricklin v. Parsons Stockyard Co.*, 192 Kan. 360, 366 (1964).

Plaintiff offers no evidence that at the time of the April 14th incident, any Defendant intentionally threatened bodily harm to him, verbally or otherwise, or that he had an "immediate apprehension" of bodily harm. Thus no reasonable jury could return a favorable verdict on Plaintiff's assault claim.

As to Plaintiff's battery claim, Defendants respond that their touching of Plaintiff was not wrongful, but was privileged or justified, as their intent

was to regain control of a combative inmate within a correctional setting, and that their actions were not done in an attempt or a threat to cause Plaintiff any bodily harm, but rather to ensure Plaintiff's safety and to prevent further disruptive behavior within the institution. Defendants contend that they used only the force which they reasonably believed was necessary to meet the Plaintiff's resistance and to control the situation.

In April of 2005, Kansas statutes expressly included a law enforcement privilege to use reasonable force while effecting an arrest, which stated:

> (1)   A law enforcement officer… need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. Such officer is justified in the use of any force which such officer reasonably believes to be necessary to effect the arrest and of any force which such officer reasonably believes to be necessary to defend the officer's self or another from bodily harm while making the arrest.

K.S.A. 21–3215. The purpose of the statute was to set limits for law enforcement officers, and where those limits were observed, to create a defense to both criminal and civil actions. *Dauffenbach v. City of Wichita*, 233 Kan. 1028, 1037 (1983). *See also* K.S.A. § 21–3211(a) (providing a general defense of justification for conduct reasonably believed to be necessary to defend against an aggressor's imminent use of unlawful force.) In *Dauffenbach*, the Kansas Supreme Court held that compliance with this statute is a defense to a criminal charge of battery against a law enforcement officer, and that the civil liability of an officer should be coextensive with his or her criminal liability. Thus under Kansas law, law

enforcement officers are not liable for civil battery during an arrest unless they use unreasonable force. *See Caplinger v. Carter*, 9 Kan. App. 2d 287 (1984). This Court believes that Kansas Courts would extend the defense codified in K.S.A. 21–3215 to Defendants in this case in relation to their acts during the April 14th incident.

That conclusion is fortified by Kansas cases which liberally recognize common law justifications as defenses to battery claims. *See e.g., First Southern Baptist Church v. Nowak*, 209 P.3d 764, 2009 WL 1858255 (Table) (Kan.App. 2009) (affirming summary judgment that no battery occurred where a church usher, in an effort to minimize disruption of the service, grabbed a non-member who was screaming during church; the usher reasonably believed that some force was necessary to terminate the intrusion, and the amount of force used was reasonable); *Cf, State v. Wade*, 45 Kan.App.2d 128 (Kan.App. 2010) (battery case recognizing common law defense of parental discipline -- that parent is justified in using a reasonable amount of force upon a child for the purpose of safeguarding or promoting the child's welfare.)

In evaluating a motion for summary judgment, the Court ordinarily views the facts "in the light most favorable to the party asserting the injury." *Scott v. Harris*, 550 U.S. 372, 377 (2007). This usually means adopting the plaintiff's version of the facts, unless that version is so utterly discredited by the record that no reasonable jury could believe him. *Thomas v. Durastanti*,

607 F.3d 655 (10th Cir. 2010); *Rhoads v. Miller*, 352 Fed.Appx. 289, 291, 2009 WL 3646078, 2 (10th Cir. 2009). But here, as noted above, Plaintiff's version of the facts is not supported by admissible evidence.

Additionally, Plaintiff's claims of battery or excessive force are contradicted by the video tape of the incident which the parties agree depicts what actually happened on April 14th. Three views capture the entire incident. Although no audio is included, the video shows that when the confrontation initially began, Plaintiff turned away from Officer Walker, resisting the Officer's attempts to subdue him or to retrieve an object from his mouth. It shows Officer Walker taking Plaintiff to the ground, then multiple officers responding to subdue the Plaintiff, but does not show any Officer hitting, kicking, or otherwise delivering a blow to the Plaintiff. Instead, the video shows the Officers quickly surrounding Plaintiff's prone body, placing their hands on him and then moving very little themselves, consistent with an intent to merely restrain the Plaintiff or to preclude him from moving. Nothing in the video tends to show excessive use of force by any BOP employee, or tends to show any personal participation by Defendants Gray, Lacy or Gum.

As the Supreme Court has stated in another case claiming excessive use of force:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

*Scott v. Harris*, 550 U.S. 372, 380 (2007). *See York v. City of Las Cruces*, 523 F.3d 1205 (10th Cir. 2008) (same).

To evaluate excessive force, the Court views the facts from the perspective of the officer. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989). The focus of the inquiry is on the circumstances as they existed at the moment force was used. *Id.* The admissible evidence confirms that the Defendants believed that Plaintiff had put an illegal item in his mouth, that Plaintiff refused to spit it out, and that Plaintiff did not immediately comply with their efforts to restrain him and to retrieve the item from his mouth. Even Plaintiff's inadmissible "affidavit" is consistent with this conclusion, as Plaintiff admits that he put an item in his mouth as he was on his way to be strip searched and immediately before Defendants allegedly battered him; that during the alleged battery, he was told to "spit it out," but did not do so; and that immediately after the alleged battery, Defendant Walker said he thought Plaintiff had put some dope in his mouth. *See* Doc. 11, Exh. 10.

Plaintiff appears to believe a battery or excessive force is apparent based solely on the number of officers who responded to the call for assistance and restrained him while he was in a prone position. The video does reveal that six or seven officers responded to Officer Walker's call and assisted in restraining the Plaintiff. But the number of officers responding does not on its face tend to show excessive force. *Cf McNair v. Coffey*, 279 F.3d 463, 466 (7th Cir. 2002) (remarking that "nothing in the fourth

amendment specifies how many officers may respond to a call"). Likewise, "[r]estraining a person in a prone position is not, in and of itself, excessive force when the person restrained is resisting arrest." *Giannetti v. City of Stillwater,* 216 Fed.Appx. 756, 765, 2007 WL 441887, 9 (10th Cir. 2007), *quoting Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 593 (7th Cir. 1997). Defendants' continued use of force to restrain the Plaintiff when he was on the floor was not unreasonable in response to his perceived opposition.

Plaintiff also appears to believe that the severity of his injuries demonstrates the unreasonable or excessive use of force. Where an inmate suffers an injury, the extent of that injury is relevant. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Here, however, the absence of admissible evidence on this issue prevents the Court from determining what injuries Plaintiff suffered as a result of the April 14th incident.[5] The Court cannot conclude solely from the fact that Plaintiff was injured that the force used by Defendants was excessive, unreasonable, or unjustified.

---

[5] Even Plaintiff's allegations describing his injuries are inconsistent. *Compare* Plaintiff's tort claim (alleging Defendants "negligently broke my left arm in four places, damaged both shoulders, damaged my right knee, damaged my left wrist, damage (sic) to both of my kidneys and mental anguish"), *with* his Amended Complaint (containing no mention of injury to left wrist or kidneys). Plaintiff's allegations also attribute some of his injuries to causes other than the April 14th incident. *See e.g.*, Doc. 11 p. 76 (regarding his back: "I must have hurt it again somehow or when they shot me with that bean bag gun it broke something else."); *Id,* p. 75 ("I fell again last year and hurt it again.")

Because Plaintiff fails to show that any Defendant used unreasonable force against him, the Court, upon considering the totality of the circumstances, finds summary judgment appropriate on Plaintiff's assault and battery claims. Because the officers acted in pursuit of their duties to enforce the law and to preserve security at USP Leavenworth, reasonably believed that some force was necessary to retrieve the foreign object in Plaintiff's mouth and to restrain the Plaintiff, and used a reasonable amount of force given Plaintiff's resistance, Defendants were justified in their touching of Plaintiff on April 14th under the Kansas law existing at the time. *See Nowak*, 209 P.3d 764.

**Alternative ruling**

For similar reasons, assuming subject matter jurisdiction over Plaintiff's claims of excessive force, the Court alternatively finds that Plaintiff has failed to show that Defendant Walker violated his constitutional or statutory rights which were clearly established at the time of the events, see *Shroff v. Spellman,* 604 F.3d 1179, 1188 (10th Cir. 2010), and that no reasonable jury could find that Defendants Gray, Lacy or Gum personally participated in any use of force against the Plaintiff on April 14th. No "affirmative link" has been shown between theirs actions and any constitutional violation. *See Ledbetter v. City of Topeka,* 318 F.3d 1183, 1187 (10th Cir. 2003).

IT IS THEREFORE ORDERED that Defendant's motion to dismiss or for summary judgment is granted.

Dated this 20th day of December, 2011 at Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge